Patterson v. State.

---

## FRANK PATTERSON v. THE STATE.

1. The fifty-second section of the Habeas Corpus act (*Rev., p.* 468) is not inconsistent with the sixty-fifth section of the Criminal Procedure act (*Rev., p.* 266).

2. The right of prisoners to be discharged under either of these sections may be enforced by *habeas corpus.*

3. Neither of these sections is intended to affect the validity of indictments nor to deprive the courts of the right to try defendants thereupon.

4. A prisoner who has been tried and convicted upon an indictment may be lawfully detained in custody pending his writ of error to reverse the conviction, although the trial of the indictment had been so long delayed that he could not legally have been imprisoned upon the indictment before the conviction; and if, in such a case, the conviction be reversed on error, the prisoner will not be entitled to discharge before the trial court has had an opportunity of trying him again.

In error to the Supreme Court.    For opinion of Supreme Court, see 20 *Vroom* 326.

For the plaintiff in error, *R. T. B. Stout* and *W. T. Hoffman*.

For the state, *John W. Swartz* and *Chas. Haight, Prosecutor of the Pleas*.

The opinion of the court was delivered by

DIXON, J.    This writ of error brings up the judgment of the Supreme Court affirming a decision of one of the justices of that court, by which the plaintiff in error was, on the return to a writ of *habeas corpus,* remanded to the custody of the sheriff of Monmouth county.    The facts appear in a statement printed in the reports with the opinion of the Supreme Court.

One of the grounds urged by the plaintiff for his discharge from imprisonment is that his right to a speedy trial upon the indictments pending against him has been denied.

The essential justice of the claim of a prisoner charged with crime to be speedily tried or released is indisputable, but it did not assume definite form in the laws of England until the Habeas Corpus act of 31 Car. II.    The seventh section of this celebrated statute provided that if any person committed for high treason or felony, upon his prayer or petition in open court the first week of the term or the first day of the Session of Oyer and Terminer and General Gaol Delivery to be brought to his trial, should not be indicted and tried the second term, Sessions of Oyer and Terminer or General Gaol Delivery, after his commitment, or upon his trial should be acquitted, he should be discharged from his imprisonment.

In the colony of New Jersey the spirit of this enactment was probably observed from very early times, for in 1713 the provincial assembly passed a law which seems but an extension of its provisions to prosecutions for misdemeanor.    This act " for preventing malicious prosecutions by informations,"

(*Nevill's Laws*, p. 27), required that the party or parties prosecuted for misdemeanors should be brought to trial the second court after information filed, or be discharged the court without paying of any fees; and Chief Justice Green has given the weight of his concurrence to the opinion that this statute was designed to supply what was regarded as an omission in the English Habeas Corpus act, which embraced only high treason and felony. *State* v. *Garthwaite*, 3 *Zab.* 143, 147.

Upon the spirit and tenor of these laws the right of criminals to a speedy trial stood in this commonwealth until 1795, when the legislature of the state repealed the statute of 1713 and enacted the substance of the English Habeas Corpus act, substituting in the seventh section for "high treason or felony" the terms "treason, murder, manslaughter, sodomy, rape, arson, burglary, robbery, forgery or larceny, or for rescues or voluntary escapes in any such case." *Pat. L.*, p. 168. Shortly afterwards, on February 2d, 1799, "An act relative to indictments" was passed (*Pat. L.*, p. 349), the first section of which declares that every indictment shall be tried the term or session in which issue is joined or the term after, unless the court, for just cause, shall allow further time for the trial thereof, and if such indictment be not so tried as aforesaid the defendant shall be discharged.

With both of these statutes before it, the constitutional convention of 1844 engrafted in the organic law the provision that in all criminal prosecutions the accused shall have a right to a speedy trial, and thus enjoined, not only upon the courts, but also upon the legislature itself, the duty of preserving this time-honored principle in the exercise of penal authority.

It has been suggested that section 1 of the act of 1799 superseded the clause cited from the seventh section of the act of 1795, but this suggestion seems scarcely supportable. The later statute contains no express repealer of the earlier one, and therefore, under the general rule, both should be maintained if practicable. This is now rendered more clearly

proper by the fact that in the Revision of March 27th, 1874, the legislature re-enacted 'both sections *pari passu;* that of 1795 as section 52 of the Habeas Corpus act (*Rev., p.* 468), and that of 1799 as section 65 of the Criminal Procedure act ·(*Rev., p.* 266). They can stand together without antagonism. 'Their aim was to confer rights upon prisoners, not power upon ·courts. The right under the Habeas Corpus act becomes complete upon the prisoner's duly petitioning to be brought to trial and the failure to try him for two terms after commitment. The right under the other act becomes complete upon the failure to try the prisoner for two terms, after issue joined upon the indictment, and the omission of the court to allow, for just cause, further time for trial. That prisoners indicted for the graver offences mentioned in the Habeas 'Corpus act may acquire both of these rights, while those in-·dicted for minor offences can acquire but one, is to be ac-·counted for by those considerations which originally limited the provision to cases of high treason and felony, prominent :among which was, I presume, the danger that courts would be deterred by the mere gravity of the accusation from affording due protection to the priceless right of personal liberty.

Doubt has also been expressed whether the right to a discharge, in pursuance of the Criminal Procedure act, can be ·enforced by *habeas corpus;* but this doubt should be resolved, ·as it was by the Supreme Court, in favor of the remedy. Our :present act, in terms, declares that every person detained for :any criminal or supposed criminal matter, or under any pretence whatsoever (except in cases specified and not here pertinent), may prosecute a writ of *habeas corpus* to inquire into the cause of such imprisonment (section 1) ; that the court or justice before whom the party shall be brought on such writ ·of *habeas corpus,* shall, immediately after the return thereof, proceed to examine said return and the facts as set forth therein (section 22) ; and if no cause be shown for such imprisonment or restraint, or for the continuation thereof, such ·court or justice shall discharge such party from the custody ·or restraint under which he is held (section 23) ; the act also

provides that itself shall be liberally construed so as to secure, as far as possible, the liberty of the citizen (section 56). The meaning of this language is unmistakable, and devolves upon the judicial authorities entrusted with the power of issuing this writ, the duty of releasing any prisoner detained in criminal proceedings without lawful cause. It is equally clear that if a person indicted for crime has not been tried during the term in which issue was joined or the term after, and the court has not, for just cause, allowed further time for trial, then the lawful cause for his detention has expired and his right to discharge has accrued, according to the will of the legislature, which in this regard is supreme. In such a juncture, to refuse to discharge a prisoner upon *habeas corpus* is simply a refusal to obey the law.

At this point other more intricate questions appear, viz., if the trial court has allowed further time for trial, but the cause for such allowance be not shown, must it be assumed, on *habeas corpus*, that the allowance was for just cause; or if the trial court has allowed further time for trial, and the cause for such allowance be shown and was deemed just by the trial court, is the justness of the cause open for consideration on *habeas corpus?* These questions this court is not now prepared to decide, and their decision is not necessary in this case.

The facts shown on the return of the writ indicate that when the writ issued the plaintiff had not been confined without trial beyond the time specified in the statute. He had been indicted for forgery at the October Term, 1884, and at that term had been arraigned, had pleaded and been committed. At the following term of January, 1885, he was again indicted for forgery, was arraigned, and having pleaded, was remanded to jail. The indictments found at the January Term legalized his imprisonment without trial until the close of the ensuing term, which began in May, 1885. During the term of May, 1885, he was tried and convicted, whether upon indictments presented at the October Term, 1884, or on those presented at the January Term, 1885, is not clear.

Patterson v. State.

Nor is it important to ascertain which, for, as was properly observed by Mr. Justice Depue, in *Apgar* v. *Woolston*, 14 *Vroom* 57, this statute was not intended to affect the validity of indictments or the right of the courts to try defendants thereupon, but only to secure the discharge of untried defendants from imprisonment or bail, and therefore the plaintiff was legally put to trial upon either term's indictments, although his imprisonment at the time might be dependent for its legality upon the later indictments. When, during the May Term, 1885, the plaintiff was convicted, his case passed beyond the range of the statutes we have been considering. He was thereafter imprisoned, not as an accused person awaiting trial, but as a convicted criminal, and nothing appears to raise a doubt of the legality of his detention for that cause. The fact that his conviction was reversed on error in June, 1886, did not render his previous imprisonment unlawful, nor place him again under the operation of the statutes as if no trial had taken place; but it imposed upon the trial court the duty of re-trying him (*Smith* v. *State*, 12 *Vroom* 598), of course, in observance of his right to be tried speedily. This duty the court had had no opportunity of performing when, on June 28th, 1886, the writ of *habeas corpus* was sued out. It is clear that at that time there had been no such denial of the plaintiff's statutory or constitutional right to a speedy trial as rendered the continuation of his imprisonment illegal.

The other reasons urged for the plaintiff's discharge are properly dealt with in the opinion of the Supreme Court.

The judgment of that court should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, KNAPP, VAN SYCKEL, BROWN, CLEMENT, COLE, PATERSON. 10.

*For reversal*—None.